Defendant-appellant Devlin R. Mitchell appeals the August 31, 1998 Judgment Entry of the Tuscarawas County Court of Common Pleas granting summary judgment to plaintiff-appellee Mennonite Mutual Insurance Co. and denying appellant's Motion for Summary Judgment.
 STATEMENT OF THE CASE AND FACTS
This case arises from a physical altercation between appellant and John France. Appellant drove to France's property with his brother-in-law, Steven Sprankle. Almost immediately, an altercation ensued between France and Sprankle. Appellant joined in the fight, but was quickly incapacitated when France struck him in the head with a metal pipe. Appellant claims the blow blinded him. On October 15, 1996, appellant filed suit against France for the alleged assault.
At the time of the incident, appellee insured France under a homeowners insurance policy. On April 8, 1998, appellee filed a declaratory judgment action, seeking a determination of its rights and responsibilities under the policy for claims arising out of the incident.
Both parties filed a motion for summary judgment. The issue before the trial court was whether the intentional acts exclusion in the policy applied to the assault. In an August 31, 1998 Judgment Entry, the trial court declared the intentional acts exclusion applied, and appellee had no obligation to defend or indemnify France. In the same entry, the trial court overruled appellant's Motion for Summary Judgment. It is from this Judgment Entry appellant prosecutes his appeal, assigning the following error:
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT TO APPELLEE-MENNONITE AND DENYING APPELLANT'S REQUEST FOR SUMMARY JUDGMENT. I
Herein, appellant argues the trial court erred as a matter of law in granting summary judgment to appellee for two reasons. First, the trial court erred in declaring the intentional act exclusion applied where appellee failed to demonstrate its insured intended the actual injury inflicted. Second, the policy language defining "loss" is susceptible to more than one meaning; therefore, it must be strictly construed against the insurer.
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc.
(1987), 30 Ohio St.3d 35, 36. Civ.R. 56(C) states, in pertinent part:
 Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, citingDresher v. Burt (1996), 75 Ohio St.3d 280.
It is based upon this standard we review appellant's assignment of error.
On August 28, 1996, the date of the incident, France was insured by appellee's Homeowners Policy, No. DF-13171. That policy states, in relevant part:
 Coverage L — Personal Liability — We Pay for damage for which an insured is liable by law if the bodily injury or property damage is caused by an occurrence to which this policy applies.
 We defend a suit if it is due to bodily injury or property damage covered by this policy. We
may investigate and settle claims or suits. We do not have provide a defense after we paid our limit of liability as a result of a judgment or a written settlement.
 Occurrence means an accident. This includes loss from repeated exposure to similar conditions.
 EXCLUSIONS
 i. This policy does not apply to liability which results from:
* * *
 (8) A loss caused by an intentional act of an insured or done at the direction of an insured.
Further, under the "Amendatory Endorsement," the policy provides:
The policy is amended as follows:
* * *
EXCLUSIONS THAT APPLY
* * *
 11. Intentional Acts: We do not pay for a loss which results from an act committed by or at the direction of an insured and with the intent to cause a loss.
In Physicians Ins. Co. v. Swanson (1991), 58 Ohio St.3d 189, a child was partially blinded when another child shot him with a BB gun. The issue before the Supreme Court was whether, under a policy of insurance containing an intentional acts exclusion, an insurance company was responsible for coverage or indemnification when the insured intended the action which caused injury. Id. at 190. The Supreme Court held "[i]n order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself was expected or intended." Id. at syllabus.
In so holding, the Court specifically noted while the action of shooting the BB gun was intentional, the resulting injury was accidental:
 It is not sufficient to show merely that the act was intentional. In this case the exclusion is inapplicable because the trial court's determination that [the injured chid's] injury was not intentionally inflicted or substantially certain to occur is supported by competent, credible evidence. Therefore, the insurers are obligated to defend and indemnify the appellants.
(Emphasis added). Id. at 193-194.
These facts stand in stark contrast to the matter sub judice.
In his deposition, France testified:
 Q. Maybe the easier way to ask it is what was your intent when you struck Mr. Mitchell with the bar?
 A. I was defending myself, and I was going to hurt him no matter what it took to put him down.
Q. Was it your intent to blind him?
 A. When I swung the pipe, I didn't think about blinding him, I thought more about removing his head from his shoulders.
Q. Was it your intent to kill him?
 A. No, but it was the intent that he wasn't going to get back up for a while. If that meant he was going to get hurt, then I intentionally hit him to put him down.
 Q. Was it your intent to cause him any kind of back injury?
 A. At that time, my intent was to save my life or my family's life, and whatever it took to put him down is what I did. I'm not going to stand here and say that I did not intend to hurt him in self-defense. It was intentional. If I didn't want to hit him, I wouldn't have hit him.
Deposition of John France at 46-47.
Clearly, France intended to swing the metal pipe at appellant's head, and intended injury. Because both the act and the injury were intentional, we find the intentional acts exclusion applies in this case.
Additionally, appellant argues the word "loss" in the above-quoted "Exclusion 11. Intentional Acts" is subject to more than one meaning. Ambiguous language in an insurance policy must be construed against the insurance company and in favor of the insured. Faruque v. Provident Life and AccidentIns. Co. (1987), 31 Ohio St.3d 34. This rule applies with particular force to exclusions contained in an insurance policy. Cincinnati Ins. Co. V. Mosley (1974), 41 Ohio App.2d 113.
Appellant argues the term is ambiguous because it could mean either "bodily injury" or "property damage," or both. If it means only "property damage," the exclusion would apply only to an instance where an intentional act damaged property and the insured intended to cause property damage. Appellant contends because of this "ambiguity," the intentional acts exclusion clause does not apply to the bodily injury suffered by appellant in the instant matter.
This Court finds no such ambiguity. Webster's New College Dictionary defines "loss" as "an act or instance of losing, * * * casualties, * * * the amount of a claim on an insurer by an insured." (1995) 647. This definition does not support appellant's contention "loss" can be defined as property damage only. We believe the clear meaning of the term emcompasses both property damage and personal injury. We conclude the exclusion applies to the bodily injury appellant suffered.
Appellant's sole assignment of error is overruled.
The judgment of the Tuscarawas County Court of Common Pleas is affirmed.
By: Hoffman, J., Wise, P.J. and Farmer, J. concur.
-------------------
-------------------
 ------------------- JUDGES
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Tuscarawas County Court of Common Pleas is affirmed. Costs assessed to appellants.
-------------------
-------------------
 ------------------- JUDGES